**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**FACTORY DIRECT
WHOLESALE, LLC,**

                 **Plaintiff,**

    **v.**

**GIANTEX, INC., GOPLUS CORP.,
and WEI WU,**

                **Defendants.**

**1:17-cv-341-WSD**

## OPINION AND ORDER

    This matter is before the Court on Defendants Giantex, Inc. ("Giantex"),

GoPlus Corp. ("GoPlus"), and Wei Wu's (collectively, "Defendants") Motion to

Dismiss for Lack of Personal Jurisdiction and Improper Venue, or Alternatively, to

Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [10].

## I.     BACKGROUND

    Plaintiff Factory Direct Wholesale, LLC ("Factory Direct") is a limited

liability company organized under the laws of the State of Georgia.  Defendant

GoPlus is a California corporation that allegedly owns or controls Defendant

Giantex, also a California corporation.  Defendant Wei Wu is an individual and

citizen of California.  Mr. Wu is the Chief Executive Officer ("CEO") of GoPlus and allegedly has ownership interests in GoPlus and Giantex.   (Compl. ¶ 5).

Factory Direct is a Georgia-based company with rights it asserts to certain trademarks and trade names protected by state and federal law.  Factory Direct alleges that since 2005 it has been operating online marketplaces for various products including home, office, pet, and health products using the following trade names and trademarks: "Factory Direct Wholesale," "FDW," "BestPet," "BestOffice," and "BestMassage."  (Compl. ¶ 11).  Factory Direct has a federal trademark registration issued by the U.S. Patent and Trademark Office for "BestPet" (Registration No. 3934022).  ([1.2]).  BestPet refers to pet crates and crate covers, pet furniture, and play yards for pets.  (Compl. ¶ 14).  Factory Direct also alleges trademark registration for "BestOffice" and "BestMassage."  ([1.3], [1.4]).

Factory Direct alleges that Defendants are unlawfully infringing its trade names and trademarks in sales of certain products by Defendants on eBay.com and Amazon.com.  (Compl. ¶ 20).  As an example of this claimed infringement, Factory Direct attached to the Complaint an "Order Details" invoice for a pet stroller (the "Stroller") sold by Defendant Giantex under the BestPet name on Amazon.com to a consumer in Duluth, Georgia.  (Compl. Ex. 1 (the "Accused

Sale")).  The invoice shows that on or about January 19, 2015, Eastern

Enterprises, LLC in Duluth, Georgia ordered the Stroller from Giantex through

Amazon.com.  (Compl. Ex. 1).  Giantex is listed as the seller on the invoice.  Id.

GoPlus shipped the Stroller to Eastern Enterprises at its Duluth, Georgia address.

(Declaration of Wei Wu [10.7] ("Wu Decl.") ¶¶ 5-6).[1]  Factory Direct concedes

that Eastern Enterprises is its affiliate and that the Stroller was ordered by Eastern

Enterprises to document that Defendants were engaging in infringing sales.

On January 30, 2017, Factory Direct filed its Complaint for Damages and

Injunctive Relief [1] (the "Complaint" or "Compl.").  Factory Direct asserts claims

for infringement of a federally protected registered trademark under 15 U.S.C.§

1114 (Count I); unfair competition under 15 U.S.C. § 1125 (Count II); common

law trademark infringement (Count III); and violation of the Georgia Uniform

Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*  (Count IV).  Factory

Direct seeks an injunction preventing Defendants from infringing on its trademarks

and trade names and a judgment for damages and unlawful profits generated by

Defendants unauthorized use of Factory Direct's trademarks and trade names.

---

[1]     The invoice shows that Eastern Enterprises requested to return the Stroller.
(Compl. Ex. 1).

Factory Direct alleges that this Court has specific jurisdiction over each of the Defendants because they each regularly transact, solicit, or conduct business in Georgia, including deriving substantial revenue from internet sales of goods sold to and used by consumers in Georgia and this judicial district. (Compl. ¶ 9).[2] Factory Direct alleges only the Accused Sale as evidence of Defendants' contacts with Georgia.

On March 13, 2017, Defendants filed their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or alternatively, Motion to Transfer Venue [10].

Defendants submitted affidavits and other evidence of the nature and extent of their contacts with the State of Georgia. The evidence submitted shows that Defendant Wu is not a resident of Georgia. He maintains residences in Ningbo, China, and San Bernardino County, California. He does not maintain a bank or financial account in Georgia. (Wu Decl. ¶ 9). Mr. Wu does not own any real or personal property or lease any real or personal property in Georgia. He does not have an agent or representative in Georgia, and he has not conducted any business in Georgia.

---

[2]    Plaintiff originally claimed to have both general and specific jurisdiction over Defendants, but in their Response to the Motion, Plaintiff states that it is only asserting specific jurisdiction. (See Pl's Resp. [13] at 9 n.2).

Giantex and GoPlus do not have offices, bank or financial accounts, telephone numbers, employees, agents, representatives, or real or personal property, owned or leased, in Georgia; and their documents and records are maintained at their places of business in California. (See Declaration of Tommy Xu [10.2] ("Xu Decl.") ¶¶ 2-3; Wu Decl. ¶¶ 2-3). Giantex and GoPlus are not registered to do business in Georgia. (Xu Decl., ¶¶ 2-3; Wu Decl., ¶¶ 2-3). Giantex and GoPlus do not provide services, advertise, solicit, or conduct business activity directed to or in Georgia except "that Giantex Inc. sometimes sells products to Georgia based on Internet orders placed by buyers through third party Internet website [sic] that is accessible from anywhere in the United States, such as Amazon.com." (Xu Decl. ¶ 3). Similarly, "GoPlus ships products to Georgia occasionally for Internet orders placed by buyers through third party Internet website [sic] that is accessible from anywhere in the United States, such as Amazon.com." (Wu Decl. ¶ 3).

II.     **DISCUSSION**

A.     Personal Jurisdiction Principles

A plaintiff bears the burden of establishing personal jurisdiction over the defendants against which it files an action. Consolidated Dev. Corp. v.

Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000); Diamond Crystal Brands, Inc.

v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir. 2010).

A federal court undertakes a two-step inquiry in determining whether

personal jurisdiction exists: "the exercise of jurisdiction must (1) be appropriate

under the state long-arm statute and (2) not violate the Due Process Clause of the

Fourteenth Amendment to the United States Constitution." United Techs. Corp. v.

Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Georgia's long-arm statute provides

limited circumstances in which a court may exercise personal jurisdiction over a

nonresident defendant "in the same manner as if he or she were a resident of this

state, if in person or through an agent, he or she . . . [t]ransacts any business within

this state." O.C.G.A §§ 9-10-91(1).[3]

"The Due Process Clause requires that the defendant's conduct and

connection with the forum State be such that he should reasonably anticipate being

haled into court there." Diamond Crystal, 593 F.3d at 1267 (internal quotation

marks omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474

(1985)). "The heart of this protection is fair warning" to the defendant. Id.; see

Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008) ("The Constitution

---

[3]     Section 9-10-91 includes other bases for personal jurisdiction that are not
relevant here.

prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit there."). "Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Diamond Crystal, 593 F.3d at 1267 (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984)). "The presence of minimum contacts raises a presumption that the court may constitutionally exercise jurisdiction" and, to rebut that presumption, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1221 n.29 (11th Cir. 2009) (internal quotation marks omitted) (quoting Burger King, 471 U.S. at 477).

When a defendant files a motion to dismiss for lack of personal jurisdiction and an evidentiary hearing is not held, "the plaintiff bears the burden of establishing a *prima facie* case of jurisdiction over the movant, non-resident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.

1990). A party presents enough evidence to withstand a motion for directed verdict by putting forth substantial evidence "of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.'" Walker v. NationsBank of Florida, 53 F.3d 1548, 1554 (11th Cir. 1995).

In deciding a motion to dismiss "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." Madara, 916 F.2d at 1514. If a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Diamond Crystal, 593 F.3d at 1257. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id.

B.     Personal Jurisdiction Under Georgia's Long-Arm Statute

Factory Direct claims the Court has personal jurisdiction over Defendants under Section 1 of Georgia's long arm statute. It alleges that Defendants "regularly transact, solicit and/or conduct business in Georgia, including deriving substantial revenue from goods sold to and used by consumers in Georgia through websites such as eBay.com, Amazon.com, and/or Rakuten.com." (Compl. ¶ 9).

Defendants argue that the business Defendants transact in Georgia is insufficient to assert jurisdiction under the Georgia long arm statute.

Georgia's long-arm statute allows for the exercise of personal jurisdiction over a nonresident corporate defendant who transacts "any business" within Georgia. O.C.G.A § 9–10–91. The Georgia Supreme Court requires that Section 9–10–91 be construed literally. Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352 (Ga. 2005). A corporate defendant need not physically enter or establish a presence in Georgia for the state to exercise jurisdiction over it. Diamond Crystal, 593 F.3d at 1264. Transacting "any business" by mail, telephone, or the internet will suffice. Id. "Jurisdiction under subsection (1) of the long-arm statute . . . still 'expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state.'" Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC, 819 F. Supp. 2d 1338, 1342 (M.D. Ga. 2011) (quoting Diamond Crystal, 593 F.3d at 1264).

Defendants accepted the order for the Accused Sale through Amazon.com and fulfilled it by shipping the Stroller to a customer in Georgia. Defendants further concede that Giantex "sometimes sells products to Georgia based on Internet orders placed by buyers through third party Internet website[s]," (Xu Decl.

¶ 3), and that GoPlus "ships products to Georgia occasionally for Internet orders placed by buyers through third party Internet website[s]," (Wu Decl. ¶ 3). The Court finds that this admission, along with the sale and shipment of the Stroller to Eastern Enterprises in Georgia, is sufficient to satisfy Section 9–10–91.

      C.     Personal Jurisdiction Under the Due Process Clause

The Court next considers whether exercising jurisdiction over Defendants complies with constitutional due process. "Once a statutory basis for long-arm jurisdiction is established, the remaining question is whether the exercise of personal jurisdiction comports with due process." United States v. Billion Int'l Trading, Inc., No. 1:11-CV-2753-WSD, 2012 WL 1156356, at *3 (N.D. Ga. Apr. 5, 2012); see Diamond Crystal, 593 F.3d at 1267. "Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction." Billion Int'l Trading, 2012 WL 1156356, at *3; see Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).

To determine whether the exercise of specific jurisdiction satisfies due process, the Eleventh Circuit applies a three-pronged test: "(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the

benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal citations and quotation marks omitted).

### 1. Whether Factory Direct's Claims Arise Out of or Are Related to Its Contacts

To assert specific jurisdiction a defendant's contact with the forum state must relate to the issues being litigated. Oldfield v. Pueblo De Bahia Lora, SA, 558 F. 3d 1210, 1220 (11th Cir. 2009). The Eleventh Circuit has not developed a specific relatedness test. Id. at 1222. Indeed, it has "heeded the Supreme Court's warning against using 'mechanical or quantitative' tests." Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).

Defendants argue that Factory Direct's claims of trademark infringement and unfair trade practices do not "arise from" the Accused Sale because Eastern Enterprises—as Factory Direct's affiliate—knew knew that Defendants were not associated with Factory Direct and therefore the Accused Sale could not cause a "likelihood of confusion" under a trademark infringement theory. This argument is not persuasive.

Factory Direct adequately alleges that Defendants sold the Stroller—an allegedly infringing product—to a customer in Georgia, shipped the Stroller to a

customer in Georgia, and later executed a refund with a customer in Georgia.

Those contacts with Georgia are directly related to Factory Direct's claims

involving the sale of products that allegedly infringe on its trademarks and trade

names. The Court is satisfied that here, the first prong of the three-pronged due

process analysis is fulfilled because Factory Direct's claims do arise out of or

relate to its Georgia contacts—the sale and shipment of its allegedly infringing

products. See Evans v. Andy & Evan Indus., Inc., No. 15-CV-61013-WPD, 2016

WL 8787062, at *4 (S.D. Fla. July 15, 2016) (finding first prong satisfied where

defendant maintained a Florida-accessible website).

> 2. Whether Defendants Purposefully Availed Themselves of the
> Privilege of Conducting Business in Georgia

The Court next considers whether Defendants' Georgia contacts "involve

some act by which the defendant[s] purposefully availed [themselves] of the

privileges of doing business within the forum." Louis Vuitton Malletier, S.A. v.

Mosseri, 736 F.3d 1339, 1357 (11th Cir. 2013).[4] The Supreme Court has stated

---

[4] "Traditional jurisdictional analyses are not upended simply because a case involves technology that facilitates a party's reach across state lines. . . . [T]he use of an online market, as opposed to a brick and mortar store, does not create a 'virtual moat' around the defendant, preventing jurisdiction except where the defendant is incorporated or has offices." Dohler S.A. v. Guru, No. 16-23137-CIV, 2017 WL 4621098, at *6 (S.D. Fla. Oct. 16, 2017) (citing Boschetto v. Hansing, 539 F.3d 1011, 1019 (9th Cir. 2008)).

that "minimum contacts" includes not just the placement of the product in the stream of commerce, but "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State." Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality opinion). Purposefully availment may be found where a defendant conducts small amount of sales made through a website accessible nationwide. See Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1371 (N.D. Ga. 2013); see also EnviroCare Tech., LLC v. Simanovsky, No. 11-3458, 2012 WL 2001443, at * 4 (E.D.N.Y. June 4, 2012) (finding that the sale and shipment of three products through Amazon to the forum state is sufficient to satisfy due process's "minimum contacts" inquiry).

Defendants sold the allegedly infringing Stroller to Easter Enterprises in Georgia. That Defendants sold the Stroller through "third-party website[s]" such as Amazon.com is immaterial here where the evidence shows that Giantex used Amazon.com to interact directly with customers in Georgia. There is no evidence that Giantex was merely the manufacturer that supplied products that Amazon warehoused and sold itself. The order report (Compl. Ex. 1) and the shipping slip for the return and refund of the Stroller (Xu Decl. Ex. D) both list Giantex as the seller. Defendant GoPlus admits to shipping the Stroller and other non-specified

products into Georgia. By the sale and shipment of the Stroller to a customer in

Georgia, Defendants purposefully availed themselves of the privileges of doing

business in Georgia such that they should have reasonably anticipated being haled

into court in Georgia.[5]

Factory Direct argues that Defendants' contacts with Georgia should instead

be analyzed using the sliding-scale approach discussed in Zippo Mfg. Co. v. Zippo

Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). The analysis should,

---

[5] Defendants criticize the use of the Accused Sale as Factory Direct's effort to improperly manufacture jurisdiction. Indeed, Factory Direct admits to having conducted the Accused Sale in an effort to document alleged trademark infringement, and courts have looked askance at efforts to manufacture jurisdiction via online purchases made at the direction of a plaintiff or its counsel. See Millennium Enterprises, Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 911 (D. Or. 1999) ("the court finds that the sale to Ms. Lufkin was nothing more than an attempt by plaintiff to manufacture a contact with this forum sufficient to establish personal jurisdiction."); Edberg v. Neogen Corp., 17 F. Supp. 2d 104, 112 (D. Conn. 1998) ("Only those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes.").

While such efforts to assert jurisdiction are concerning, the Court is persuaded by the nature of Defendants' sale and shipment of the Stroller as well as the evidence of additional sales and shipments of Defendants' other products to Georgia. The Vice President of Giantex, Tommy Xu, states that the company "sometimes sells products to Georgia" via online retailers such as Amazon. (Xu Decl. ¶ 3). Additionally, Mr. Wu admitted that "GoPlus ships products to Georgia occasionally for Internet orders placed by buyers through third party Internet website[s]." (Wu Decl. ¶ 3).

according to Factory Direct, be based on the nature of Defendants' online presence and their sales through Amazon.com.  This analysis also leads to the conclusion that Defendants' sale into Georgia would cause Defendants to reasonably anticipate they would be haled into court in Georgia.

The Eleventh Circuit has not issued specific guidance on how to interpret Internet contacts in evaluating whether a court may constitutionally exercise personal jurisdiction over a defendant.  See Rice, 975 F. Supp. 2d at 1370.  A number of district courts, including several in this district, have applied the Zippo test to determine if specific personal jurisdiction can be constitutionally exercised in cases involving internet activities.  See Imageline, Inc. v. Fotolia LLC, 663 F.Supp.2d 1367 (N.D. Ga. 2009); Barton S. Co., Inc. v. Manhole Barrier Sys., Inc., 318 F.Supp.2d 1174, 1177 (N. D. Ga. 2004).  The Zippo sliding-scale test focuses on the nature and function of a defendant's website to evaluate whether the defendant is subject to the court's jurisdiction.  At one end of the spectrum are interactive websites which a defendant uses to transact business over the Internet. Zippo, 952 F. Supp. at 1124.  On the other end are passive websites on which users simply post about goods and services that are sold by the defendant to purchasers. Id.  The Court finds Fusionbrands, Inc. v. Suburban Bowery of Suffern, Inc., No. 1:12-CV-0229-JEC, 2013 WL 5423106 (N.D. Ga. Sept. 26, 2013) instructive.  The

*Fusionbrands* court applied the <u>Zippo</u> test to determine if the plaintiff had personal jurisdiction over the defendant. The <u>Fusionbrands</u> court specifically discussed the defendant's use of Amazon.com as a third-party website:

> The fact that the sales were made through a storefront on Amazon.com, rather than the defendant's own website, makes little difference. An Amazon.com storefront allows a business to add products to their customized storefront, notifies the business when orders are placed for those products so that the business can ship the products to the customers, and then deposits the payments made into the business's bank account.

<u>Id.</u> at *6.

The evidence here shows that Defendants used Amazon.com to allow Giantex to connect with buyers in Georgia. The Stroller order form lists the seller as Giantex, and GoPlus admits to having shipped the product to Georgia. Whether Giantex used its own website or a third-party, the evidence is that, as illustrated by the Stroller sale, Giantex used Amazon.com to interact with, that is to sell to, buyers in Georgia. The evidence also shows that, where necessary, Giantex used Amazon.com to facilitate returns to Giantex from Georgia buyers who wished to return items for a refund. The Court thus finds that in maintaining its Amazon.com storefront, Defendants purposefully availed itself of the laws of Georgia.

3.  <u>Fairness Factors</u>

At this stage in the analysis, the Court must simply ensure that exercising

personal jurisdiction over Defendants is reasonable and comports with "fair play and substantial justice." <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 631 (11th Cir. 1996).  The Supreme Court has said that where a defendant has purposefully directed his activities at forum residents and then seeks to defeat jurisdiction, the defendant must present a "compelling case." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985).  This analysis requires the following factors to be considered: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) plaintiff's interest in obtaining a convenient forum and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the sates in furthering fundamental substantive social policies.  <u>Id.</u> at 476–77 (citing <u>World–Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980).

Defendant relies on the first and fourth prongs to argue that requiring Defendants to litigate in this forum places a substantial burden on them and the interstate justice system because Defendants and their documents, witnesses, and employees are in California.  These factors are not enough to establish that jurisdiction over Defendants offends traditional notions of fair play and substantial justice.  <u>See</u> <u>Diamond Crystal</u>, 593 F.3d at 1274 (requiring California-based defendant to litigate in Georgia); <u>see also</u> <u>Wish Atlanta, LLC v. Contextlogic, Inc.</u>,

No. 4:14-cv-00051 (CDL), 2014 WL 5091795, at *7 (M.D. Ga. Oct. 9, 2014) ("[I]t is not uncommon to require an out-of-state corporation to defend itself in a forum located across the country."); Premium Nutraceuticals, LLC, 2016 WL 3841826, at *4 (requiring Canadian corporation to litigate in Georgia did not offend fair play and substantial justice); Rice, 975 F. Supp. 2d at 1372-7.

      D.     Defendant's Motion to Dismiss for Improper Venue

A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue.  "The plaintiff has the burden of showing that venue in the forum is proper."  Pinson v. Rumsfeld, 192 F. App'x 811, 817 (11th Cir. 2006) (citing Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1355 (11th Cir. 1990)).  When venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it

could have been brought." 28 U.S.C. § 1406(a). Whether to dismiss or transfer is within the discretion of the Court. See Pinson, 192 F. App'x at 817; Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983).

Venue is not proper in this district under Section 1391(b)(1) because not all defendants reside in Georgia. As to the second prong, Defendants argue that the events giving rise to Factory Direct's trademark infringement claims have "no real connection to Georgia." As in its personal jurisdiction argument, Defendants focus their argument only on the Accused Sale, arguing that because it was "orchestrated" by Factory Direct, it should be disregarded in considering the district in which a substantial part of the events giving rise to the claims occurred. Again, Defendants fail to address their admission that they sold additional products in Georgia. Accordingly, venue is proper in this district, and Defendants' motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure is denied.[6]

---

[6]      Even if venue in this district was not proper under Section 1391(b)(2), it is proper under Section 1391(b)(3) because the Court has found that it may constitutionally exercise personal jurisdiction over Defendants. See 28 U.S.C. § 1391(b)(3) (providing for venue in any judicial district where the defendant is subject to the court's personal jurisdiction).

E.      Defendant's Alternative Motion to Transfer Venue

Defendants request that if the Court denies its motion to dismiss for improper venue, that it transfer this action the District of California pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The party seeking transfer of an action bears the burden of establishing that the balance of Section 1404(a) interests favors transfer. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). A district court may consider several factors in evaluating a motion to transfer, among them: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion. See Robinson v. Giarmarco & Bill, P.C.,

74 F.3d 253, 260 (11th Cir. 1996) (reviewing district court's transfer of venue for "clear abuse of discretion").

Defendants have not made a sufficient showing to warrant a transfer of venue. Defendants identify only two non-party witnesses in California, Tommy Xu and Jerry Zhang. (Wu Decl. ¶ 7; Xu Decl. ¶ 8). Defendants mistakenly assert that "[b]ecause there is only one sale of the Accused Product to Georgia" there should be no non-party witnesses in Georgia. Such an argument is premature given Defendants' admission that it has made other sales to customers in Georgia. Defendants' liability for trademark infringement will be determined by the challenged products that were marketed and sold and the infringing nature of those products. Key witnesses for this determination may include the parties, expert witnesses, and consumers located in Georgia and other states. This is especially true considering that Plaintiff is a Georgia LLC based in Georgia, where it claims it suffered injury.

Additionally there is little added cost of transporting documents under modern electronic discovery. Defendants admit that the convenience and relative means of the parties and the availability of process to compel the attendance of unwilling witnesses are neutral in this analysis. Defendant's motion to transfer is denied.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Giantex, Inc., GoPlus Corp., and Wei Wu's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or Alternatively, to Transfer Venue [10] is **DENIED**.

**SO ORDERED** this 5th day of February, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE